JUSTO MUÑOZ COLÓN, Petitioner, *v.* DISTRICT COURT OF PONCE, Respondent.

No. 1534.   Argued November 1, 1943.—Decided March 7, 1944.
Rehearing denied April 19, 1944.

*Leopoldo Tormes García* for petitioner. *R. Hernández Matos* for intervener, plaintiff in the main action. *R. Rivera Zayas* and *G. Rivera Cestero* and *Hartzel, Kelley & Hartzel, Rafael O. Fernández* and *José L. Novas, as amici curiae.*

Mr. Justice De Jesús delivered the opinion of the court.

On December 10, 1942, the workman José Torres González filed a complaint in the Municipal Court of Ponce against his ex-employer, Justo Muñoz Colón, for the recovery of unpaid wages. The municipal court dismissed the same and thereupon he appealed to the district court. In the district court the workman amended his complaint, which read substantially as follows: That on June 20, 1936, the complainant and the respondent entered into a verbal contract of lease of services; that by virtue of said contract, the workman bound himself to render services as watchman and to take charge of the farms and the cattle belonging to his employer, and to milk the cows, distribute the milk and perform other odd jobs on said farms; that the employer on the other hand agreed to pay him a weekly salary of $5 for seven days of work of eight hours each; that the workman fulfilled his part of the contract from June 20, 1936, until November 18, 1940, including Sundays and holidays; that on petition of the employer, he began to work at one o'clock in the morning until noon, and again from one o'clock until five o'clock in the afternoon; that during all that time the workman received from his employer the agreed salary of $5 per week for eight hours of work a day, but that he did not receive any compensation for the seven hours of extra time which he worked every day, which compensation, according to the workman, amounts to $2,056.80; that the employer has refused to pay the same and therefore he prays for judgment in the above-mentioned sum with legal interest from the filing of the complaint.

The employer challenged the jurisdiction of the district court, moved that certain particulars of the complaint be stricken and answered. In his answer he contended that the workman never performed the work alleged; that he never worked more than eight hours; and that the workman punctually received the agreed salary of $5 per week for the work

done. He further alleged certain defenses, among others, prescription of action, which we shall hereinafter discuss in so far as pertinent to the disposal of the questions in controversy.

The district court dismissed the questions of law raised by the employer, and, passing on the merits of the case, held that in accordance with the evidence, the contract of employment was for a week of seven days, each of eight working hours, at the rate of five dollars per week; that the workman had worked seven hours overtime during 1,612 days, making a total of 11,284 extra hours, and not 10,284 as the workman had mistakenly alleged; it calculated the compensation on a basis of seventy-two cents a day of eight working hours, that is, at nine cents an hour, and granted ordinary compensation for said seven hours and double pay for the ninth hour, and consequently rendered judgment in favor of the workmen in the sum of $1,160.64, without costs and attorney's fees.

For the review of said judgment the employer instituted in this court the present certiorari proceeding. Considering the public interest attached to the questions involved herein, we issued the writ pursuant to Act No. 32 of May 3, 1943.

■ Following the logical order, the first question to be decided is whether or not this court has jurisdiction to take cognizance of this case. It is true that §12 of Act No. 10 of 1917 (II), as amended, provides that in cases of claims for farm wages more than one appeal shall not be allowed, and since this case was brought in the municipal court, an appeal from that judgment to the district court represents the first and only appeal allowed by the Act. The petition now before us is not an appeal, but a certiorari proceeding of a special character, inasmuch as under the express provision of law which allows this proceeding questions of procedural as well as of substantive law may be reviewed therein, and the writ is issued, regardless of whether the

order or judgment involved is reviewable by an ordinary appeal before the Supreme Court. Since this is not an appeal, §12 of Act No. 10 of 1917 does not deprive this court of jurisdiction over the case.

██ Having settled the preliminary question just mentioned, let us pass to the merits of the proceeding, that is, whether the contract of hire covered eight working hours daily, as the trial judge held, or whether, on the contrary, it covered the fifteen hours daily which the workman alleged he worked.

The purpose of a certiorari proceeding, like the one now before us, is not to review questions of fact, but of law; but when the findings of fact of the lower court are not supported by the evidence, then the error committed by the lower court in holding as proved a fact which is not supported by any evidence at all, is an error of law reviewable by certiorari. *Mayagüez Sugar Co.* v. *Court of Tax Appeals,* 60 P.R.R. 737 and cases cited.

In the case at bar the holding of the lower court that the workman agreed with his employer to work only eight hours daily finds no support whatsoever in the evidence. The only evidence which appears from the record on that point is the testimony of the workman himself. On direct examination he testified that he earned $5 weekly and that he worked fifteen hours daily. Tr. of Ev., p. 7. There was nothing in his testimony tending to show that his contract was based on days of eight hours. But on cross-examination the contrary appeared, thus:

"When you agreed to work for don Justo Muñoz, were you aware that you had to do all that work which you just described, for $5? —Yes, sir.

"Were you aware of it?—Yes, sir.

"And did you fully comply with that contract of services up to that date?—Yes, sir.

"And you never made any claim?—No, sir.

"When was it that you made your first claim, after quitting your job, when you called on the superintendent?—On November 18, 1940.

"After you quit your job with don Justo?—Yes, sir.

"Then you agreed with don Justo to work for $5 weekly in that manner?—Yes, sir.

"      *      *      *      *      *      *      *

"During that period of the thirty-six, from the year 36 to the year 40, which you have mentioned, have you always done the same kind of work for don Justo Muñoz?—The same.

"That for which you were contracted, at a salary of $5 per week? —Yes, sir.

"You never did any other kind of work?—No, sir. After the work at the dairy, I inspected the farm.

"Did don Justo Muñoz bind himself at any time to pay you more than $5 per week for the work you did for him?—No, sir."

That is what appears from the record concerning the hours of work. We do not see how the lower court, with such evidence, could reach the conclusion that the contract of hire was for eight hours, when the workman himself positively testifies that said contract covered the fifteen hours which he worked. Since the work performed by the workman is covered by the contract of $5 a week, the holding of this court in the case of *Cardona* v. *District Court*, 62 P.R. R. 59, is fully applicable herein, as follows:

"We will not, of course, reframe the contract of the parties to make the $1.68 cover the twelve hours, by presumption or otherwise. But if the testimony at the trial shows that this was actually the intention or agreement of the parties, or that there was a prevailing custom to that effect, the workers have won an illusory victory by our holding that they are entitled to compensation at the ordinary rate for the tenth, eleventh, and twelfth hours. That is to say, if the parties actually contracted that the workman would be paid $1.68 for twelve hours, making an hourly rate of 14¢ an hour, the latter has already been fully compensated at the ordinary rate for all twelve hours, although he will, of course, still be entitled to the extra compensation for the ninth hour which the statute specifically provides he shall receive."

Our conclusion, however, does not deprive the workman from recovering double compensation for the ninth hour extra which he worked every day, in accordance with our holding in *Cardona* v. *District Court, supra*. According to the findings of the lower court, the workman worked for 1,612 days, at the rate of fifteen hours daily. Thus he has earned the double pay which the statute allows for the ninth hour for each one of those 1,612 days. Since he worked 105 hours weekly for $5, a simple arithmetical operation will show that the rate of each working hour was $.0476, and, therefore, the additional compensation amount to $76.73, and not to $290.16, as was held by the lower court, for it calculated the salary at the rate of nine cents per hour instead of at $.0476, as appears from the contract.

The employer alleges that since the workman claimed the additional compensation for the first time when he filed the complaint in the municipal court on December 10, 1942, the action for the recovery of compensation of services, rendered before December 10, 1939, has prescribed pursuant to §1867 of the Civil Code (1930 ed.) which provides, in its pertinent part, the following:

"Actions to demand the fulfillment of the following obligations shall prescribe in three years:

"     *     *     *     *     *     *     *

"3. For the payment of mechanics, servants, and laborers the amounts due for their services, and for the supplies or disbursements they may have incurred with regard to the same.

"     *     *     *     *     *     *     *

"The time for the prescription of actions referred to in the three preceding paragraphs shall be counted *from the time the respective services have ceased to be rendered.*" (Italics ours.)

The employer as well as the *amicus curiae* maintain that the period of prescription of three years began to run from the end of each week when the workman received his salary and not from November 18, 1940, when he quit his job, as

contended by the workman. The former base their theory on recent judgments from the Supreme Court of Spain, especially those of May 26, and December 19, 1933. The workman, however, relies on the construction which the Supreme Court of Spain has been giving to §1967 of the Spanish, Civil Code, equivalent to §1867 of our Code, until it rendered said judgments. That construction is to the effect that the prescription begins to run from the time that the respective services are last rendered. Applying this doctrine to the present case, it would follow that the prescription began to run from November 18, 1940, when the workman last rendered services to his employer. Since the complaint was filed on December 10, 1942, it is evident that, according to that construction, the action has not prescribed, in whole or in part.

From an examination of the judgments of the Supreme Court of Spain relied on by the employer and the *amicus curiae,* it appears that the same are inapplicable to this jurisdiction. This is so because, according to the judgment of December 19, 1933, that court is of the opinion that since the Labor Code is subsequent to the Civil Code, §1967 of the latter code should be subordinated to the provisions of §18 of the former code, which copied from the workman's brief, reads as follows:

"Every labor contract shall last for a fixed period.

"If an express stipulation is lacking, and when there is no prevailing custom to the contrary, the contract will operate as follows: per day, when the compensation is daily, even though payment is made weekly or semi-monthly; per month, when the compensation is paid monthly, or annually, if it is for years."

Said Labor Code is not in force in Puerto Rico and therefore §1867 of our Civil Code is not subject to such subordination. But apart from said Labor Code, the Supreme Court of Spain, in an attempt to justify the new interpretation which it now gives to the Civil Code, commits an error in

construing §1967 in relation with §1969 of the same code which, textually copied, reads as follows:

"Section 1969 (Spanish Code). The time for the prescription of all kinds of actions, when there is no special provision to the contrary, shall be computed from the day on which they could have been instituted."

We say that such construction of §1967 in relation with §1969 of the Spanish Civil Code is erroneous because the latter, being of a supplementary character, should only be applied consistent with its own terms as to fixing the time when prescription begins to run, *when there is no special provision to the contrary.* But since said special provision is contained in §1967, by prescribing that "The time for the prescription of actions referred to in the next three preceding paragraphs *shall be computed from the time the respective services were last rendered"* (Italics ours), the general provision of a supplementary character is not applicable. The phrase *from the time the respective services were last rendered,* if construed in its ordinary and usual meaning, conforming to the general and popular use (§15 of the Civil Code), can have only one meaning, that prescription herein began to run from November 18, 1940, on which date the workman ceased to render the services which he had rendered uninterruptedly to his employer from June 20, 1936. Therefore, to be consistent with §1867 of our Civil Code, we should decide that the action instituted herein has not prescribed, in whole or in part, in the period of three years allowed by §1867, *supra,* for the prescriptive period for actions of this kind had not elapsed, counted from November 18, 1940, when the workman last rendered his services, to December 10, 1942, when the complaint was filed in the municipal court.

We realize that the conclusion which we have reached in this case may seem unjust with respect to the workman's compensation, but he agreed on a compensation of $5 weekly

in the contract of lease of services for the work which he performed during fifteen hours daily, and once more the case of *Cardona* v. *District Court, supra,* applies as follows:

"Under the Fair Labor Standards Act the contract or customary rate cannot be less than the minimum therein provided. But, as already noted, Act No. 49 provided no minimum rate, and, except for collective bargaining, there was nothing by way of insular law which has been called to our attention to prevent the parties from contracting for a starvation wage."

Since we are not dealing with an appeal, within which we may render the judgment that the district court should have rendered, we must annul the judgment appealed from and remand the case to the lower court wherein judgment should be rendered following the reasoning in this opinion.

ON MOTION FOR REHEARING[1]
April 19, 1944

MR. JUSTICE DE JESÚS delivered the opinion of the court.

This is a motion for rehearing wherein petitioner alleges that the interpretation placed by us on the last paragraph of §1867 of the Civil Code is erroneous. He insists that we must follow the construction which the Supreme Court of Spain applied to §1967 of the Spanish Civil Code (equivalent to our §1867) in its judgment of December 19, 1933. According to said judgment, the time for prescription of the action for recovery of wages shall be computed from the day on which the employee received his weekly, semi-monthly, or monthly salary, as the case may be, because such was the day when the employee could have and should have effectively claimed any deficiency in the amount of his salary.

Petitioner contends that when the lease of services is for an indefinite period, if it is agreed to pay for the services weekly, semi-monthly, or monthly, it is presumed that the contract has been entered into for the minimum period of

[1] Attorneys *José López Baralt* and *Leopoldo Tormes García,* on the motion for rehearing.

one week, two weeks, or one month, as the case may be. In support of his contention the petitioner cites certain cases taken from a note in Corpus Juris. He also alleges that he finds support for that presumption in §1478 of the Civil Code, which has no equivalent in the Spanish Civil Code, and provides as follows:

"Every employee of an industry or other lucrative business whose services are contracted for *without a definite term,* and whose salary is agreed upon by the month, fortnight, or week, who is discharged without just cause and without previous notice served at least fifteen days prior to his discharge, shall be entitled to receive from his principal or employer such salary as he may have earned and one month's, one fortnight's, or one week's additional salary, as the case may be; . . ." (Italics ours).

The presumption relied on by the petitioner undoubtedly exists in the states where the cases cited by him originated. But in Puerto Rico such presumption does not exist, nor is it found, as alleged by petitioner, in §1478 of the Civil Code. The purpose of said Section is to grant predetermined compensation in those cases in which there is lacking a *fixed period* in the contract to hire services where the employer discharges the employee *without just cause and without previous notice served at least fifteen days prior to his discharge.* In order to fix that compensation, a standard had to be established, and the lawmaker decided to take as a standard for such compensation the salary of one week, a fortnight, or a month, according to whether the salary was paid by the week, fortnight, or month, respectively. It could have taken any other standard and in any case it would not have limited the contract to a fixed period.

That presumption exists in Spain, but it is imposed by §18 of the Code of Labor of said country which provides:

"Every labor contract shall last for a fixed period.

"If an express stipulation is lacking and when there is no prevailing custom to the contrary, the contract will operate as follows: per

day, when the compensation is daily, even though payment is made weekly, or semi-monthly; per month, when the compensation is paid monthly, or annually, if it is for years."

But in Puerto Rico, as we said in our main opinion, said Code of Labor does not exist, or any other similar statute, and therefore we must construe §1867 of our Civil Code in accordance with its own terms, bearing in mind its legislative history.

Section 1967 of the Spanish Civil Code has its origin in Law 10, Tit. 11, Book 10 of the *Novísima Recopilación,* which provides that an action for the recovery of wages due to servants or menial servants for services rendered should be instituted "within three years after they were discharged by said masters," unless it were proved that prescription had been interrupted by demands of payments during said period. *Códigos Españoles,* vol. 9, p. 339.

The author of the *Novísima Recopilación* to which we have just referred had to be aware that at the beginning of the sixteenth century, when this law was in force, the poor workman was at a great disadvantage with respect to his powerful "master." Never would a workman have dared to claim from his employer the salary duly earned by him without running the risk of losing his job. And in aid of the workman's right a law was enacted which provided that the time for prescription would begin to run after the workman were free from his employer's influence.

But in the nineteenth century the Spanish Civil Code went into effect and its authors realized that there had been a change in the nature of the services rendered by the workman and that a process of renovation was under way which abolished the former contract and gave rise to a new contract. With this in mind they were undoubtedly prompted to limit the scope of the law of the *Novísima Recopilación* so that the time for prescription would be computed from the day each contract expired without taking into account

whether the workman remained in the same employment. And giving expression to their thought, they prescribed in the last paragraph of §1867 of the Civil Code the following:

"The time for the prescription of actions referred to in the next three preceding paragraphs shall be computed from the time the *respective* services were last rendered." (Italics ours.)

If the authors of the Civil Code had intended to create the presumption that the lease of services for an indefinite period would expire at the end of each week, fortnight, or month, as the case may be, when the services were paid per week, fortnight, or month, respectively, and therefore that the time for prescription should be computed from the time that the employer had made each payment, they could have easily expressed such intention, just as they provided for urban leases in the absence of an agreement as to the duration of the lease.[1] The Supreme Court of Cuba in its judgment No. 99 of December 2, 1905, construed § 1967 of the Civil Code as we have done in the instant case, and so did the commentators of the Spanish Civil Code and the Supreme Court of Spain until the Code of Labor was enacted therein. But here, said code does not exist, and to cases like the present one we can not apply § 1869 of our Civil Code (1969 Spanish code) where prescription accrues with the right of action. And this is so because §1869 is applicable, according to its own terms, "when there is no special provision to the contrary" but said special provision is expressed, as we have seen, in the last paragraph of § 1867, wherein it is provided, for cases like the one involved herein, that the time for prescription shall be counted "from the time the respective services have ceased to be rendered."

It is unnecessary for the workman, and even unjust to the employer, considering the modern means of defense avail-

---

[1] "Should a term not have been fixed for the lease, it is understood for years, when an annual rent has been fixed, for months, when the rent is monthly, and for days, when it is daily. . . ." Section 1581, Spanish Civil Code (§1471, Puerto Rico, 1930 ed.).

able to the former to defend his own rights, that the employer should be under a constant fear of being sued for unpaid wages during the whole existence of the contract of services not having a fixed period and even within three years after the respective services were last rendered. In many cases the employer runs the risk of losing the evidence which he could have used for his defense if the action had been brought against him within a reasonable time; in other cases the amount of the compensation sought might increase to such proportion that a judgment against him might cause his ruin economically. But these considerations, just and reasonable as they are, should be brought before the Legislative Assembly and not before the courts of justice, who are estopped from passing judgment on the soundness and wisdom of a law.

For the reasons stated the motion for reconsideration will be denied.